NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0620n.06

No. 09-3062

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 31, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ELIJAH AARON PALNIK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| WESTLAKE ENTERTAINMENT, INC., et al., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |

Before:        BOGGS, ROGERS, and WHITE, Circuit Judges

BOGGS, Circuit Judge. Elijah Palnik, known to his fans as Elijah Aaron, sued the producers and distributers of the movie *Steal Me* in federal court in Ohio alleging that the movie played two of his copyrighted songs without his permission. The major distributors named in the suit – Westlake Entertainment, Blockbuster, Inc., and Amazon, Inc. – settled, leaving as defendants only the producers of the movie, two California-based firms, Cineville, LLC and Picture Entertainment Corporation. These remaining defendants moved to dismiss the suit for lack of personal jurisdiction, arguing that they did no business in Ohio. Palnik responded, pointing to his complaint that alleged that the "Defendants [collectively] have offered for sale and rental, and have distributed and continue to distribute, through sale, rental or otherwise substantial numbers of copies of the Infringing Work throughout the United States, including in the Southern District of Ohio . . . ." The district court held that these allegations were insufficient because they did not state enough of a connection

between the remaining defendants' production of the movie and its eventual sale in Ohio to confer jurisdiction under federal or Ohio law.

Our task now is to decide whether this decision was in error. To do so, we review the substance of what Palnik must show for the district court to exercise personal jurisdiction and the procedure by which Palnik must show it. Our law is clear on both points.

*First*. Palnik must demonstrate that jurisdiction is consistent with the rules of the forum state and in compliance with the Due Process Clause of the Fifth Amendment. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). In cases similar to ours, where a plaintiff premises jurisdiction over the producer of a product on the sale of the product in the forum state, Ohio courts have analyzed the issue under the first rule in its long-arm statute, asking whether the suit "aris[es] from" the defendant's "transacting any business" in Ohio. Ohio Revised Code § 230.382(A)(1). The focus is on how and why the product is in Ohio; in particular, cases have emphasized the strength and nature of the relationship between the producer that put the product in the stream of commerce and the distributer that actually guided the product to Ohio. *See, e.g.*, *State of Ohio ex rel. Att'y General v. Grand Tobacco*, 871 N.E.2d 1255, 1261 (Ohio Ct. App. 2007) (holding jurisdiction proper because the distributer relationship "provided Grand Tobacco with an established distribution channel for its products to reach . . . the forum state"); *Morgan Adhesives Co. v. Sonicor Instrument Corp.*, 668 N.E.2d 959, 962 (Ohio Ct. App. 1995) (holding that a company transacted business in Ohio because "Ohio appears to be a continuous market for the eventual 'landing' of [its] products").

As to the Due Process Clause, there is, to be sure, a complex body of Supreme Court and circuit law interpreting the requirement that a defendant have "minimum contacts with [the forum

state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). But the stumbling block for a plaintiff alleging jurisdiction on the basis of a product's availability in the forum state has ordinarily been that "minimum contacts" includes not just the placement of the product in the stream of commerce, but "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State . . . ." *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality opinion). Accordingly, our court has, like the Ohio courts, focused on the distribution relationship in determining whether a producer has sufficient connection to a forum state for jurisdiction to be consistent with the due process clause.

The decision in *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F.3d 472 (6th Cir. 2003) (per curiam), illustrates our approach. The district court dismissed Bridgeport's suit against two other music publishing companies for lack of personal jurisdiction. Our court affirmed as to one defendant and reversed as to the other. The first defendant was "merely aware" of the fact of national distribution, but the choice to distribute was "pretty much out of [its] hands." *Bridgeport Music*, 327 F.3d at 480. Meanwhile, the second defendant "sought" nationwide distribution by contracting with a distributor for sales "throughout the United States, its territories, commonwealth, possessions . . . ." *Id.* at 483. The court held that this relationship "supports a prima facie . . . finding" of jurisdiction under *Asahi*. *Id.* at 484; *see also Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993) (personal jurisdiction appropriate because the defendant "made a

No. 09-3062
Palnik v. Westlake Entertainment, Inc., *et al.*

*deliberate decision* to market [its product] in all 50 states . . . .") (emphasis in original); *Poyner v. Erma Werke Gmbh*, 618 F.2d 1186, 1190-91 (6th Cir. 1980).

Accordingly, under both the Ohio long-arm statute and the Due Process Clause, Palnik must demonstrate more than the production of the movie by Cineville and Picture Entertainment and its sale in Ohio; he must show that they, either through their own actions or through their distribution relationship, directed the product to Ohio.

***Second***. The strength and nature of the showing required of Palnik depend on how the court approaches the issue. Where, as here, a court decides a motion to dismiss for lack of personal jurisdiction "solely on written submissions and affidavits . . . rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing . . . in order to defeat dismissal." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). The court "must consider the pleadings and affidavits in the light most favorable to the plaintiff," *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), and need only find that the "plaintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). Still, it remains the plaintiff's burden and the complaint must have "established with reasonable particularity" those specific facts that support jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (*quoting Provident Nat'l Bank v. California Fed. Savings & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)); *cf. Bell Atlantic Co. v. Twombley*, 550 U.S. 544, 567 (2008) (holding that allegations of parallel conduct

were not sufficient to establish a conspiracy because there was "an obvious alternative explanation" that market forces worked against competition).

Together, these considerations leave us a straightforward decision. We are to determine whether Palnik has made prima face case based on Palnik's allegations, and only Palnik's allegations; the defendants' affidavits contradicting the facts are irrelevant. To be entitled to proceed with his suit, Palnik must have alleged specific facts that establish with reasonable particularity that the defendants directed *Steal Me* to Ohio.

Palnik did not meet his burden. His complaint, to be sure, makes a number of relevant allegations. About our defendants, it asserts that "PEC [Picture Entertainment Company] is a producer and/or distributor" and that "Cineville, Inc. or Cineville, LLC, or both, are producers and/or distributors" of the movie. And it makes allegations about the defendants collectively. It alleges that the "Defendants have made, and will continue to make, substantial profit from the sale of the Infringing work" and that the "Defendants have offered for sale and rental, and have distributed and continue to distribute, through sale, rental or otherwise substantial numbers of copies of the Infringing Work throughout the United States, including in the Southern District of Ohio . . . ."

These allegations amount to the following facts as to our defendants: (1) the defendants participated in making the movie as "producers" *or* "distributors" (Palnik has since conceded that they are producers); (2) the defendants made money from the movie; (3) the movie ended up in Ohio by the actions of the original defendants collectively. Drawing inferences for Palnik, as we must, these allegations permit two potential conclusions as to the distribution of *Steal Me* to Ohio. First, our defendants, after making the movie, caused it to be distributed to Ohio through a national or

regional distribution contract. Second, our defendants, for whatever reason – because they do not own the distribution rights, because they deferred entirely to a third-party distributor, or for another reason that gave them no control over the movie's distribution – were not responsible for the movie appearing in Ohio.

Because one conclusion supports jurisdiction and the other does not, Palnik's complaint remains unclear as to jurisdiction and therefore fails absent reasonably particular facts that resolve which is the better understanding of the defendants' actions toward the forum state. *Cf. Twombley*, 550 U.S. at 567. Palnik's allegations provide no such resolution: a court cannot infer that an agreement of the sort necessary for jurisdiction under *Bridgeport* and the Ohio cases – one that required (as opposed to permitted or was silent as to) sale or rental in Ohio – existed. The allegations do not sort out the relationship between the defendants: Cineville and Production Entertainment may have produced the film, but a production company does not necessarily own the distribution rights or control how distribution is accomplished. *See Bridgeport*, 327 F.3d at 484 n.11 (emphasizing that plaintiff failed to demonstrate grounds for jurisdiction because "no contract language is presented" and because "Bridgeport does not set forth specific facts . . . to find that [defendant] actually required [distributor] to market, distribute, or license" the infringing work in the forum state). Without any "reasonable particularity" as to this fact critical under both federal and Ohio law, Palnik's complaint leaves us unable to determine whether personal jurisdiction exists. *Neogen*, 282 F.3d at 887.

Palnik contends that this result puts a plaintiff like him in an impossible position because any information about the distribution relationship will be in control of the defendant. Both the Federal

Rules of Civil Procedure and our case law governing personal jurisdiction are more forgiving to a litigant with an information deficit than this argument acknowledges. A party and her attorney can, on "knowledge, information, and belief," assert specifically that the existence of the necessary distribution relationship will "likely have evidentiary support after a reasonable opportunity" for discovery. *See* FED. R. CIV. P. 11(b). And such an assertion will be assumed true for the purposes of the party's prima facie case for jurisdiction "notwithstanding . . . contrary assertions" from the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). To prevail, at least at this early stage, Palnik merely had to assert the likelihood that, should he be permitted to look for it, the required relationship would be found to exist.

This procedural arrangement also defeats the related suggestion that a remand for limited discovery on the jurisdiction issue is necessary to dispose of the case. The district court exercised its discretion to decide jurisdiction on the papers, requiring Palnik to make only a prima facie showing of jurisdiction. In a case with this posture, it is usually the defendant, who otherwise would be left "unprotected from the plaintiff's bald written allegation of jurisdictional facts," that "invoke[s] the court's discretion to order a pretrial evidentiary hearing" or "proceed[s] to trial without waiving the defense" after the court has held allegations to be sufficient to make a prima facie showing of jurisdiction. *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989). Palnik had his chance (by making a prima facie showing of jurisdiction) to demonstrate that he was entitled to proceed to trial without discovery and did not take advantage of it.

Although it would have been preferable for discovery to have been taken in this case, Palnik forfeited any right to discovery by not explicitly raising the issue before the district court. (Indeed,

Palnik's appellate brief does not request a remand for discovery.) To be sure, Palnik's opposition to the defendants' motion below could be read as asking for, in the alternative to dismissal, discovery. But, as acknowledged by Palnik at oral argument, it should not be. Instead, Palnik argued that because "responding to Defendants' general attacks . . . would require discovery into Defendants' business and distribution relationships" and "the jurisdictional facts are inextricably intertwined with the merits of the case," the court should allow the case to *go to trial*, deferring the jurisdictional decision until all facts are known. *See Serras,* 875 F.2d at 1214 ("[W]here the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount proof which would . . . establish . . . their right to the relief sought."). That argument was not pressed on appeal and, in any case, misstates the law. The existence of "intimately intertwined" facts does not relieve the plaintiff of the burden to make a prima facie case for jurisdiction, it only prevents trying the case prior to trial. *See id.* at 1215 (concluding that intertwined facts mean that "[i]n many cases . . . a district court may find sound reasons to rule . . . that the plaintiff has made her prima facie showing . . . and to reserve all factual determinations on the issue for trial"). At issue now is whether the allegations made by Palnik suffice to make the prima facie case that entitles him to discover jurisdictional facts – whether intertwined with the ultimate issue or not.

Palnik's complaint fails not because he lacked sufficient information to state the facts supporting jurisdiction or because the defendants leveraged their possession of information to hide the true facts, but because the allegations contained in his complaint were capable of multiple interpretations regarding the defendants' involvement in the distribution of the film, at least one of

which does not support personal jurisdiction in Ohio. These are not specific facts that could establish with reasonable particularity a basis for jurisdiction. Because Palnik forfeited his opportunity to request discovery, we, like the district court, cannot determine whether there is a basis for jurisdiction.

The judgment of the district court dismissing Palnik's suit against Cineville and Picture Entertainment for lack of personal jurisdiction is affirmed.

No. 09-3062
Palnik v. Westlake Entertainment, Inc., *et al.*

**WHITE, Circuit Judge** (dissenting). I respectfully dissent. Defendants filed their motion to dismiss for lack of jurisdiction early on – in lieu of an answer. It is clear from Palnik's response to defendants' motion to dismiss that he maintained that defendants "knowingly and purposefully," "through distributors or otherwise," distributed and sold substantial copies of the movie in Ohio. Palnik's response to defendants' motion to dismiss referenced his complaint's allegations and asserted the need for discovery. Palnik argued that "responding to Defendants' general attacks on jurisdiction would require discovery into Defendants' business and distribution relationships," and that if the district court were to decide not to deny defendants' motion, the court should "defer resolution of the jurisdiction issue until trial because the jurisdictional facts are inextricably intertwined with the merits of this case."

Under these circumstances, the district court should have read the complaint's allegations, which included that defendants are producers and/or distributors of the infringing work, and that "Defendants have offered for sale and rental, and have distributed and continue to distribute, through sale, rental or otherwise, substantial numbers of copies of the Infringing Work . . . in the Southern District of Ohio," as broad enough to encompass the claim that defendants themselves, through distributors, purposefully sold the movie in Ohio. I would vacate the grant of defendants' motion to dismiss and remand for further proceedings.